Bellacosa, J.
(dissenting). In each case, I respectfully dissent and vote to reverse and order a new trial.
The sole basis upon which I would grant a new trial is that the trial court erred by refusing to instruct the jury on the essential culpable mental state element of criminal intent. The fair inferences from this record favor the People’s position that the trial court accorded at least minimal safeguards with respect to two other important and close legal issues, i.e., satisfaction of the rape shield law requirements (CPL 60.42) and refusal to instruct on mistake of fact. On that basis and *318 in those respects, I agree with the Court’s reasoning and analysis.
This Court is unanimous that general intent is the culpable mental state of the crimes for which the three defendants were charged and convicted (see, Penal Law § 15.05; Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 15, at 32-34; Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 130, at 568-570). That being so, we appear to be also unanimous that the trial court’s articulation and understanding of this principle was erroneous. In the preinstruction conference and colloquy, the trial court stated:
"There is no element of intent. * * * [T]he elements of rape and sodomy do not require any intent to do anything. It’s a crime of action as opposed to a crime of intent. It’s not a mens rea crime. * * * You don’t have to get into the intent of anybody here. Intent is not an element of the crime of rape. * * * [Intent is] not an element of the crime of forcible compulsion. * * * [I]t’s a crime of conduct, not a mens rea, state of mind” (emphasis added).
Based on that erroneous statement of the concededly applicable principle of law on the pertinent culpable mental state, which the majority characterizes merely as "misstatements to counsel,” the trial court rejected the defendants’ request to instruct on intent. Thus, my legitimate concern relates not to elaboration of what the trial court stated to the jury, but to what the trial court failed to tell the jury and its reasons for that ruling (majority opn, at 317, n 4).
This Court summarily exonerates the trial court from its erroneous refusal to instruct the jury, as requested, on the element of intent. This disposition both ignores and contradicts elementary instructional theorems. Jury instructions must include "the material legal principles applicable to the particular case” (CPL 300.10 [2]). Thus, every element of a charged crime must be included in the roadmap given to the jury for its deliberations (see, People v Flynn, 79 NY2d 879, 881; People v Lewis, 64 NY2d 1031, 1032; LaFave and Israel, Criminal Procedure, at 888 [1985]).
The prejudicial impact on the defendants from this error in relation to the other intensely disputed legal issues cannot be underestimated. It is not good enough in a case such as this, *319 and on an issue so elemental, to fall back on the instructions-as-a-whole legitimization, as the Court does here. Moreover, a serious analytical and dispositional flaw is evident in the assumption that despite the absence of any instructional guidance, the jury somehow on its own bridges the missing mental step to arrive at the element of intent and know that it was an indispensable ingredient in order to return a verdict of guilty.
Part of the very reason for jury instructions is to prevent personal leaps of logic or speculation on key legal points (see, Lanzano v City of New York, 71 NY2d 208, 211-212, rearg denied 71 NY2d 890 ["Juries should not be allowed to (base their verdicts) on misconceptions of the law when simple and straightforward instructions * * * are readily available to help them in the truth-finding process”]). I respectfully submit that the Court’s approval of this elliptical methodology represents an unwarranted departure from sound and long-standing jury instructional theory and practices. The fairer and better practice is to lead the jury to the water by complete jury instructions, not allow it to speculate on and search for interstices as it strives to fulfill its unique obligation to apply all relevant legal principles to factual evidence before finding defendants guilty beyond a reasonable doubt on all elements of crimes charged. Courts should not countenance or promulgate rules regarding jury instruction that are based on the mere wish or hope that the right ingredients may drop into the pot during the jury’s solitary deliberations. Jury instructions are freighted with commands and imperatives to assure reasonably and scrupulously that the jury will know all they need to know about the law from the sole law source, the trial court. That did not happen in this case and the Court should not excuse this critical lapse.
The Court offers no authoritative sources — and I am aware of none — for its dispensation from an instruction on the essential culpable mental state element on the novel theory that the jury, in effect, would have applied natural reasoning to stumble into the right legal result. One is left to ponder what other instructions may be bypassed in the future on this rationale.
The Court’s analysis, I respectfully submit, also loses its way among crucial words and concepts which have historically governed the imposition of criminal responsibility. To compel by "forcible coercion” is essentially a facet of the traditional *320 actus reus — the criminal act; intent is the quintessential mens rea — the culpable mental state (see, LaFave and Scott, Criminal Law, at 177-178, 196 [1972] [defining and distinguishing actus reus and mens rea]; Penal Law § 15.05). Blending and blurring the two concepts, and allowing one to be logically subsumed within or inferred from the other for instructional purposes, should not be justified as a sound legal proposition and proper method of analysis. In particular, the Penal Law provides a very precise definition of "forcible compulsion,” which does not contemplate or embrace the analysis and circumstances here (Penal Law § 130.00 [8]). Moreover, the jury’s total ignorance of its obligations, had it encountered reasonable doubt concerns on the intent element during its deliberations, is extremely disquieting. I cannot be confident that the jury understood or appreciated the particular legal consequences flowing from the absence of legal intent, a classic term of art and an indispensable element of the crime charged (contrast, People v Yanik, 43 NY2d 97, 100-101). Frankly, if the jury thought of the matter at all in this case, which is at least in some doubt, it would very likely have experienced confusion or uncertainty concerning the legal concept and how to apply the crucial principle in relation to the other intersecting, though legally discrete, nuances of this case.
Notably, the trial court gave an acting-in-concert instruction, including specific reference to the intent, required on such a theory. That highlights the prejudicial impact of the failure to instruct on the general culpable intent required for the direct commission of the crimes at issue. If reviewing courts are to assume that juries faithfully follow explicit instructions, then they should likewise accept the likelihood of a jury’s literal docility when faced with a total absence of instruction on the mental core of the direct commission of the crimes, a concededly indispensable element. A reasonably intelligent jury would more naturally conclude it was forbidden from considering intent in the constellation of issues of this case, reasoning that after being so explicitly instructed on the acting-in-concert theory, silence meant intent was not applicable on the direct commission aspect.
In sum, both precedentially and for the adverse implications to appellants, I do not believe the Court should absolve or tolerate the acknowledged gap in the essential jury instructions on a legal issue that emerged as a significant, practical nucleus of the case. This case, based on a reading of the whole *321 record, is threaded with an elusive yet worrisome potential risk of miscarriages of justice. That risk is heightened beyond acceptable limits of appellate review by rationalizing away a reversible instructional error.
Chief Judge Kaye and Judges Titone, Hancock, Jr., and. Smith concur with Judge Simons; Judge Bellacosa dissents and votes to reverse in a separate opinion.
In each case: Order affirmed.